IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXIS J. STEWART, | ) | Case No. 1:19-cv-2283 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| ED SHELDON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION[1]** |

On January 14, 2017, first responders found Alexis J. Stewart attempting to resuscitate

Martha Baker.  Baker was given Narcan, revived, and stated that she had had overdosed on drugs

she received from Stewart.  Stewart was then taken to jail, where, four days later, inmate Trenton

Mathews overdosed on drugs which Mathews stated that Stewart had smuggled into the jail.

Stewart later admitted to an informant that he had given drugs to someone outside and someone

inside the jail, both of whom overdosed.  Following a jury trial, Stewart was found guilty of

corrupting another with drugs and illegal conveyance of drugs of abuse on grounds of a specified

government facility.  And Stewart was sentenced to 17 years' imprisonment.

Stewart, through counsel, filed a petition for a writ of habeas corpus under 28 U.S.C.

§ 2254 raising two grounds for relief based on ineffective assistance of counsel.  ECF Doc. 1.

Specifically, Stewart asserts:

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a
report and recommendation pursuant to Local Rule 72.1.

**Ground One:** Trial counsel was ineffective for not moving to suppress Stewart's statements to the informant regarding Baker's overdose as obtained in violation of *Massiah v. United States*, 377 U.S. 201 (1964) (ECF Doc. 1 at 6; ECF Doc. 6 at 4-5, 7-16).

**Ground Two:** Trial counsel was ineffective when he did not object to the state's toxicology expert's testimony that Mathews's urine test was presumptively positive for Fentanyl, when the expert's written report did not say there was a positive test result and the expert's intended testimony was not previously disclosed to the defense (ECF Doc. 1 at 8; ECF Doc. 6 at 5, 16-23).

Respondent, Warden Ed Sheldon, filed a return of writ. ECF Doc. 4. And Stewart filed a traverse. ECF Doc. 6.

Because Stewart's claims are meritless, I recommend that his claims be DISMISSED and that his petition for writ of habeas corpus be DENIED. I further recommend that Stewart not be granted a certificate of appealability.

# I.     Relevant State Court Proceedings

## A.     Trial Court

On June 14, 2017, a Logan County, Ohio, grand jury indicted Stewart with: (i) one count of possession of cocaine; (ii) one count of aggravated possession of drugs; (iii) two counts of corrupting another with drugs; (iv) one count of illegal conveyance of drugs of abuse on to grounds of a specified governmental facility; and (v) one count of engaging in a pattern of corrupt activity. ECF Doc. 4-1 at 3-5. Steward pleaded not guilty. ECF Doc. 4-1 at 6-9.

A jury trial was held on October 5, 2017. ECF Doc. 4-1 at 10. The facts established by the evidence, as determined by the Ohio Court of Appeals, are as follows:

{¶13} At trial the State presented the testimony of Josh Strayer, a paramedic, who was dispatched to the overdose of Martha Baker at the Village Pantry in DeGraff on January 14, 2017. Strayer testified regarding his familiarity in dealing with overdoses, the signs of an overdose, and how opiate overdoses were combatted by the use of Narcan to neutralize the narcotic.

{¶14} Strayer testified that when he arrived at the Village Pantry he saw Martha in the parking lot right outside her car.  Martha was not breathing and Stewart was giving her CPR.  Strayer testified that Martha was put onto a cot in the squad and then given an IV with Narcan.  Strayer testified that after the Narcan was administered Martha became aware and told him that she had driven to the gas station, received a piece of paper with white powder on it from Stewart, and that she snorted the white powder.  Strayer testified that Martha was taken to the hospital at that time and treated; however, Strayer testified that two to three months later Martha died of an overdose unrelated to Stewart.

{¶15} Deputy Drew Dixon of the Logan County Sheriff's Office was the next witness presented by the State.  Deputy Dixon testified that he was dispatched to DeGraff on January 14, 2017, for an overdose.  He testified that when he arrived he recognized Stewart and Stewart indicated that he found the unconscious female—Martha Baker.  Deputy Dixon testified that he searched Martha's vehicle and found a clear container in a jacket pocket containing two Vicodin, a schedule II pain reliever.  Deputy Dixon testified there was no label on the pill bottle.

{¶16} Deputy Adam Wood of the Logan County Sheriff's Department also responded to the scene of Martha's overdose.  He testified that he spoke with Stewart at the scene and that Stewart initially stated he did not know Martha, that he just happened to be walking by her and saw her and then "jumped into action."… Deputy Wood testified that Stewart was speaking rapidly, as though he wanted to get away.  Deputy Wood testified that Stewart changed his story eventually and stated that he had arrived with Martha to the scene.  Stewart indicated that he knew Martha used drugs but he did not want to get anyone into trouble.  Deputy Wood testified that Stewart told him that Martha had bought Vicodin from someone.  Deputy Wood testified that Stewart called 9-1-1 regarding Martha's overdose.  Deputy Wood testified that Stewart was released at the scene; however, once he had information from the paramedics that Stewart had provided drugs to Martha, Stewart was arrested.

{¶17} When Stewart was taken to the Logan County [J]ail he was searched; however, Camden Roberts, a Logan County Corrections Officer testified that cavity searches were not done unless they had a warrant to do so.  Roberts testified that after Stewart was searched he was placed in a "dry cell" for some time, which was another attempt to prevent individuals from bringing drugs into the facility because the cell had a non-flushable toilet.  Roberts testified that on occasion people still got drugs into the jail either orally or rectally despite the measures taken.

{¶18} Roberts testified that shortly after Stewart was removed from the dry cell and put into "B" block, Trenton Mathews fell back and lost consciousness.  His breathing became shallow, and he had a "death rattle" on and off gasping for air.  Roberts testified that Mathews was revived with Narcan by another corrections officer.

3

{¶19} Trenton Mathews testified at trial that he was incarcerated in the Logan County Jail with Stewart and that he received a white substance on a baggie from Stewart. Mathews testified that he thought the substance was "Neurontin" but it gave him a high similar to opiates. Mathews testified that the substance was very strong, that he lost consciousness, and that he was later told it was "dope" by another inmate, which angered him because he had been "clean" from it for close to 90 days. Mathews testified that he had done drugs with inmates earlier in the day and he thought it was more of the same, but Stewart's drugs were not. Mathews testified that he licked the crumbs of drugs off of a baggie then flushed the baggie down the toilet.

{¶20} A different inmate, Blaze Kiser, testified at trial that he also used the "dope" that had been brought into the jail. He testified that it was a heroin high, not a cocaine high. Kiser testified that he initially told police that the drugs came from himself and Stewart. Kiser testified at trial that he did not convey drugs into the jail, however. At trial Kiser denied knowing that the drugs came from Stewart, stating that he could not remember what happened due to his intoxication. He testified that while he essentially overdosed that night, he did not have to be revived by Narcan.

{¶21} Detective Brent Joseph testified at trial that he was tasked with investigating Trenton's overdose at the jail. Detective Joseph testified that he spoke with Trenton and Blaze, but he wanted more evidence beyond the inmates' statements. Detective Joseph testified that he enlisted the help of Jordan Kauffman to come to the jail and pretend to be incarcerated. Kauffman would then be placed in a holding cell with Stewart and would try to get him to admit to providing the drugs to Trenton and Martha Baker.

{¶22} Jordan Kauffman did go into the cell with Stewart and Stewart made some statements regarding being incarcerated for providing heroin to someone who was outside of the jail that overdosed and that he was in trouble for someone overdosing inside the jail. A transcript of the full conversation between Kauffman and Stewart was introduced into evidence.

{¶23} The State also presented the testimony of the Logan County Coroner who testified regarding the dangers of opiate overdoses, the uses of Narcan and how it was only effective against narcotics like opiates. … The coroner testified that both heroin and Fentanyl were opiates and they were scheduled substances, but Fentanyl was much stronger.

*** 

{¶25} Finally, the State presented the testimony of a lab criminalist from the Ohio State Highway Patrol, Edward Yingling, who analyzed Trenton Mathews'[s] urine sample to look for the presence of drugs after Mathews's overdose. Yingling testified that the initial screening test showed the presence of Fentanyl

but he was unable to confirm the results from the screening and thus the results were listed as negative for Fentanyl.  The confirmation test only looked for exactly "Fentanyl" and thus would not look for compounds.

ECF Doc. 4-1 at 149-54.[2]

The relevant excerpts of the conversation between Kauffman and Stewart,[3] as described by the Ohio Court of Appeals, stated:

> **INFORMANT: What's going on?**
>
> **DEFENDANT: How long you got? Maybe detox or anything?**
>
> **INFORMANT: No, I'll be all right for a little bit.  I've got 90 days.**
>
> **\*\*\***
>
> **DEFENDANT: How did you end up getting 90 days and coming in today?**
>
> **INFORMANT: Pulled me over for expired tags.  I have a felony in California, so I'm getting extradited over there.  So I've got 90 days here, and I go for ever how long there.  Caught me with pills in my car[.]**
>
> **\*\*\***
>
> **INFORMANT: I had some Valiums too … What about you?**
>
> **DEFENDANT: Well, … I had originally – I got an F2**
>
> **\*\*\***
>
> **DEFENDNAT: Cause when I sold the heroin, someone overdosed.  Come in here with a bunch of heroin and then give some – when they let me go back to the block, I give some to somebody and they overdose.**
>
> **\*\*\***

---

[2] These state court factual findings are presumed correct unless Stewart rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 801 (6th Cir. 2013).

[3] The full transcript of the recorded conversation between Kauffman and Stewart was not included among the exhibits Warden Sheldon submitted to the court.  Because Stewart does not contest the Ohio Court of Appeals' recitation of what the transcript submitted to the jury said, I will rely on it here.

**DEFENDANT: So I got two F2's now.**
**\*\*\***

**INFORMANT: You ain't getting any charges, though, for like manslaughter or anything, right? \*\*\***

**DEFENDANT: No.  They survived.**

**\*\*\***

**INFORMANT: … So, you got F2's for people in here?**

**DEFENDANT: From in here.  One on the street and one from in here.**

**\*\*\***

**INFORMANT: Did you know the person that overdosed on the outside?**

**DEFENDANT: Uh-huh.**

ECF Doc. 4-1 at 159-64.

The jury found Stewart guilty of two counts of corrupting another with drugs and one count of illegal conveyance of drugs onto grounds of a specified governmental facility and found him not guilty of the remaining charges.  ECF Doc. 4-1 at 13; ECF Doc. 5-1 at 399-402.  And Stewart was sentenced to an aggregate 17-year sentence.  ECF Doc. 4-1 at 10-12; ECF Doc. 5-2 at 17.

**B.      Direct Appeal**

On November 16, 2017, Stewart appealed his convictions to the Ohio Court of Appeals. ECF Doc. 4-1 at 21.  Through new counsel, Stewart filed a merits brief, asserting six assignments of error, two of which are relevant to the current petition:

I.   Mr. Stewart was denied the effective assistance of counsel when counsel did not seek suppression of the statements by Stewart to an undercover agent while incarcerated at a critical stage of the case in violation of his Sixth Amendment right to counsel and the parallel Ohio right.

6

II.  Mr. Stewart was denied the effective assistance of counsel when counsel did
not object to the Edward Yingling testimony and related non-disclosure.

ECF Doc. 4-1 at 30.  In support of his first assignment of error, Stewart argued that his

statements to Kauffman regarding Baker were obtained in violation of *Massiah* and related

Supreme Court precedent because Kauffman, while working for law enforcement, deliberately

elicited incriminating statements when Stewart did not have counsel present.  ECF Doc. 4-1 at

35-38.  Stewart argued that he was prejudiced by the admission of his statements at trial because

there was no evidence as to what substance caused Baker to overdose – whether drugs allegedly

provided by Stewart or the Vicodin found in Baker's car.  ECF Doc. 4-1 at 39-40.

In support of his second assignment of error, Stewart argued that Yingling's report did

not contain a presumptive positive opiate result and the defense had not been told before trial that

Yingling would be testifying to any such results.  ECF Doc. 4-1 at 41-43.  Stewart argued that

had counsel known of this intended testimony, counsel could have challenged it under *Daubert v.

Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) because Yingling testified that presumptive

positive results were never recorded unless there was a positive confirmation test.  ECF Doc. 4-1

at 42-43.  Stewart argued that counsel could have investigated the extent and type of testing

conducted or conducted retesting of the urine samples.  ECF Doc. 4-1 at 43.  And Stewart argued

that counsel could have argued to the jury that proof of a controlled substance analog was

insufficient to sustain a conviction under Ohio Rev. Code § 2925.02(A)(3).  ECF Doc. 4-1 at 43-

44.  Stewart argued that he was prejudiced because, had counsel objected, a mistrial likely would

have been granted, and had the testimony not been admitted at all, the state would not have had

evidence that Mathews had opiates in his system.  ECF Doc. 4-1 at 44.

The state filed an appellee brief.  ECF Doc. 4-1 at 91-136.  Among other things, the state

asserted that it could provide affidavits to rebut Stewart's contention that trial counsel was

7

surprised by Yingling's testimony, which was the subject of several in-chambers, off-the-record discussions with the trial judge.  ECF Doc. 4-1 at 105-06.  Stewart filed a reply brief, arguing that notwithstanding the state's assertions of fact, the record was silent as to what communications there were between the parties regarding Yingling's testimony.  ECF Doc. 4-1 at 139-41.

On June 11, 2018, the Ohio Court of Appeals overruled Stewart's assignments of error and affirmed his convictions.  ECF Doc. 4-1 at 143-77; *State v. Stewart*, 2018-Ohio-2245 (Ohio Ct. App. 2018).  In overruling his first assignment of error, the court reasoned:

{¶42} [A]lthough Detective Joseph did send the informant into Stewart's holding cell specifically with the goal in mind of getting Stewart to admit to his culpability related to Mathews *and* Martha Baker, the preceding transcript of the conversation illustrates that the informant took little action beyond merely listening.[]  The informant initiated conversation but he did not specifically inquire directly into Stewart's crimes regarding Martha Baker.  The conversation began with the informant indicating what he was allegedly incarcerated for, then the informant asked Stewart broadly, "What about you?"  It was a generic question, yet Stewart readily volunteered claims regarding why he was incarcerated, which was for selling heroin, someone overdosing, then giving some to people in the block and that person overdosed.

{¶43} The only time the informant seemed to directly inquire about Martha Baker was when he asked Stewart, "Did you know the person that overdosed on the outside?"  By that point in the conversation, Stewart had already essentially brought it up on his own, though he never used the name Martha Baker.  In fact, he never uses her name at all and neither does the informant.

{¶44} The conversation illustrates that Stewart readily spoke to the informant, volunteering information on a number of issues that the informant had not yet specifically asked about before he inquired about the person that overdosed on the outside.  … There is no indication that Stewart felt he was under any compulsion.  … The single question alone about the person on the outside, when looked at in context of the conversation, does not appear to give rise to the violation Stewart asserts.

{¶45} However, even if we accepted that the informant being directed into the cell with the intent of asking about the Martha Baker overdose and his questions of "What about you?" and "Did you know the person that overdosed on the outside?" constituted *action* designed deliberately to elicit incriminating remarks,

we cannot find that the remarks related to Martha Baker constituted anything but harmless error.  Stewart's only statements regarding Martha Baker in the interrogation were that he was confined for allegedly selling heroin to someone on the outside, that someone overdosed, that it was on the street, and that he knew the person.  All of these statements were presented elsewhere in the record.

{¶46} At this point in the trial, the jury already had heard the testimony from the paramedic that revived Martha that Martha identified Stewart as the person providing her the drugs.  Stewart was the first person on the scene of Martha's overdose, he was with Martha at the time, and he told the officers—eventually— that he knew her and arrived with her.  He was also attempting CPR on her.  Stewart further was aware that Martha had two Vicodin with her, indicating even more knowledge of her circumstances.  Thus even assuming that the statements Stewart made related to Martha should have been excluded from the trial, we cannot find that it would be anything more than harmless error.  This is especially true given that Stewart does not ever specifically name Martha Baker to the informant, thought it could certainly be inferred from the conversation that she was who he was referring to.

{¶47} Moreover, we note that Stewart's trial counsel argued that the conversation with the informant actually showed that Stewart was really only stating what he was being charged with, not his culpability.  The informant also testified himself that he felt Stewart was just stating what he was alleged to have done and why he had ended up there.

{¶48} To find ineffective assistance of counsel, which is Stewart's ultimate allegation, we would have to find that counsel erred and that the error was prejudicial, impacting the ultimate outcome of the case.  Taking everything into account, even assuming *arguendo* that any interrogation beyond that directly related to Trenton Mathews was improper here, we cannot find that the circumstances of this case rose to anything beyond harmless error, thus there is no prejudice and we cannot find that his trial counsel was ineffective on this matter.

ECF Doc. 4-1 at 168-71 (emphasis original; footnote and citations omitted).

In overruling Stewart's second assignment of error, the Ohio Court of Appeals

reasoned:

{¶52} At the outset, there is simply nothing in the record to substantiate Stewart's claim on appeal that his trial counsel was unaware of Yingling's testimony regarding the initial screening.  In fact, Stewart's attorney *affirmatively indicated* that Yingling's testimony was anticipated after Yingling testified. … There is no indication whatsoever that he was somehow "surprised" by this revelation.

{¶53} This is further established by the fact that there was no objection to Yingling's testimony.  Moreover, Stewart's attorney was able to thoroughly cross-examine Yingling related to his testimony.  We fail to see any evidence in the record that there was a lack of disclosure on behalf of the State that somehow prejudiced Stewart.  We also fail to see how counsel was ineffective on that basis.

ECF Doc. 4-1 at 172 (emphasis original; citations omitted).

On July 11, 2018, Stewart filed a notice of appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 178-79.  His memorandum in support f jurisdiction asserted two propositions of law:

1. Stewart was denied the effective assistance of counsel when counsel did not seek suppression of the [statements] by Stewart to an undercover agent while incarcerated and at a critical stage of the case in violation of his Sixth Amendment right to counsel and the parallel Ohio right (ECF Doc. 4-1 at 182).

2. Stewart was denied the effective assistance of counsel when counsel did not object to the Edward Yingling testimony and related non-disclosure (ECF Doc. 4-1 at 183).

Stewart's arguments in support of his propositions of law largely mirrored those he made in the court of appeals.  ECF Doc. 4-1 at 188-96.  The state filed a memorandum in response.  ECF Doc. 4-1 at 232-49.  On September 26, 2018, the Ohio Supreme Court declined to exercise jurisdiction.  ECF Doc. 4-1 at 250.

## II.    Law & Analysis

### A.    Governing Standards

To obtain a writ of habeas corpus, Stewart has the burden to prove that he is "in custody" in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  Because the Ohio Court of Appeals addressed Stewart's Ground One and Ground Two claims on the merits, they are subject to a heightened standard under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *Taylor v. Patel*, No. 20-1381, ___ F. App'x ___, 2021 U.S. App. LEXIS 24142, at *10 (6th Cir. 2021).  Under that standard, habeas relief is

10

only available when the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).  The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, under which the petitioner must show that (1) trial counsel behaved *unreasonably*; and (2) that unreasonable performance *prejudiced* the defense.  466 U.S. 668, 687 (1984).  This standard creates a rebuttable presumption that counsel acted reasonably, a presumption further amplified by AEDPA.  *Id.* at 690; *Harrington*, 562 U.S. at 105.  The question becomes "not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 532 U.S. at 102.

**B.     Ground One**

In his Ground One claim, Stewart argues that trial counsel was ineffective for not moving to suppress his statements to Kauffman related to Baker.  ECF Doc. 1 at 6.

Warden Sheldon responds that the Ohio Court of Appeals' rejection of this claim was neither an unreasonable application of United States Supreme Court precedent nor an unreasonable determination of the facts in the record.  ECF Doc. 4 at 22-29.  Warden Sheldon argues first that Sheldon's statements were not obtained in violation of *Massiah* because

Kauffman did not deliberately elicit incriminating information, because his questions could be seen as more generally asking what charges Stewart faced. ECF Doc. 4 at 22. Warden Sheldon alternatively argues that the Ohio Court of Appeals reasonably determined Stewart suffered no prejudice because the information Kauffman testified to relating to Baker had already been admitted before Kauffman testified. ECF Doc. 4 at 26-28.

In his traverse, Stewart largely repeats the arguments he made in his initial brief to the Ohio Court of Appeals. ECF Doc. 6 at 10-16.

        1.    *Massiah*

The Sixth Amendment guarantees the criminally accused the right to the assistance of counsel. U.S. Const. amend VI. The Supreme Court in *Massiah* held that once the right to counsel attaches, it precludes the use at trial of incriminating statements that were "deliberately elicited" from the defendant while counsel was not present. 377 U.S. at 205-06. The statements at issue in *Massiah* were made by the defendant while on bail to his confederate in the confederate's car. *Id.* at 203. Unbeknownst to the defendant, his confederate had agreed to cooperate with the government, been instructed to "engage" in conversation relating to the offense, and allowed a radio transmitter to be installed in the car and transmit the conversation. *Id.* at 203; *see United States v. Massiah*, 307 F.2d 62, 72 (2d Cir. 1962) (Hays, J., dissenting).

The Supreme Court later clarified that to establish a Sixth Amendment violation under *Massiah*, "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). For example, the Court found that a *Massiah* violation occurred when, following the defendant's arrest: (i) the government paid an inmate in the defendant's cell block to report back incriminating statements made by the defendant; and

(ii) despite being instructed not to initiate conversation, the inmate testified that, through conversations with the defendant, the defendant implicated himself in the offense.  *United States v. Henry*, 447 U.S. 264, 266-68, 274 (1980).

### 2.    Analysis

The Ohio Court of Appeals' denial of Stewart's Ground One claim was neither contrary to, nor – ultimately – an unreasonable application of, *Strickland*.  28 U.S.C. § 2254(d).  The court explicitly cited and applied the two-prong deficiency and prejudice *Strickland* standard.  ECF Doc. 4-1 at 157-71.  And although the court's deficiency finding was arguably erroneous, it reasonably concluded that Stewart failed to establish prejudice.

The Ohio Court of Appeals first rejected Stewart's Ground One claim on the basis that no *Massiah* violation occurred.  ECF Doc. 4-1 at 167-69.  That determination could be read in one of two ways: (i) counsel reasonably elected not to object; or (ii) even if counsel had sought suppression, the request would have been denied.  Regardless of which analysis the Ohio Court of Appeals meant to employ, its conclusion that no *Massiah* violation occurred was arguably erroneous.  The court reasoned that, although the informant (a) was placed in the cell with Stewart for the express purpose of obtaining incriminating information on Stewart's interactions with Baker, (b) initiated the conversation with Stewart, and (c) asked questions that moved the conversation along, the questions posed by Kauffman were too generic to constitute deliberate elicitation and by the time he alluded to Baker, Stewart had already incriminated himself.  ECF Doc. 4-1 at 159-65, 168-70.  It is difficult to square that reasoning with *Massiah* and its progeny, which emphasize that anything more than passive listening crosses the threshold to deliberate elicitation.  377 U.S. at 206-07; *see also Fellers v. United States*, 540 U.S. 519, 524 (2004); *Kuhlmann*, 477 U.S. at 477; *Henry*, 447 U.S. at 459-60.  However innocuous Kauffman's

13

question "What about you?" may have seemed to the Ohio Court of Appeals, it was more than passive listening; it was a question designed to elicit information from Stewart on why he was in jail, *i.e.*, whether he gave drugs to Baker and what kind.  *See Kuhlmann*, 477 U.S. at 459.

The Ohio Court of Appeals' analysis also appeared to conflate the Supreme Court's Sixth Amendment precedent under *Massiah* with its Fifth Amendment precedent under *Miranda v. Arizona*, 384 U.S. 436 (1966).  ECF Doc. 4-1 at 169 (citing *Illinois v. Perkins*, 496 U.S. 292 (1990) and *United States v. Stubbs*, 944 F.2d 828 (11th Cir. 1991)).  The Ohio Court of Appeals found relevant that Stewart volunteered a lot of information before being asked about Baker's overdose and that there was no indication that Stewart was coerced.  *Id.*  But the information was volunteered in the context of an ongoing conversation in which Kauffman had prompted questions on Stewart's criminal activities.  *Cf. Henry*, 447 U.S. at 273-74.  And unlike a *Miranda* analysis, whether Stewart felt coerced is irrelevant – the question under the Sixth Amendment is, and is only, "whether the Government has interfered with the right to counsel of the accused by 'deliberately eliciting' incriminating statements."  *Henry*, 447 U.S. at 272; *see id* (declining to infuse the Fifth Amendment standard to the Sixth Amendment); *Massiah*, 377 U.S. at 206 (stating that Massiah was "more seriously imposed upon" precisely because he did not know he was speaking to an undercover agent).  Put simply, the Ohio Court of Appeals' application of *Massiah* – whether in determining counsel's reasonableness or assessing prejudice – to the facts of Stewart's case would at least seem incorrect.  But the court need not engage with whether the Ohio Court of Appeals' decision was ultimately unreasonable because, as will be discussed below, its alternative prejudice analysis *was* reasonable.  *Williams v. Taylor*, 529 U.S. 362, 410-13 (2000) (O'Connor, J., concurring) (defining what it means to unreasonably apply clearly established federal law).  Moreover, we cannot grant a habeas petition merely because we find

14

the state court's analysis to be incorrect; we must also find that it was unreasonable. Because there is an alternative basis for the Ohio Court of Appeals' ruling that was plainly reasonable, habeas relief is unavailable.

The Ohio Court of Appeals determined that Stewart suffered no prejudice because his statements to Kauffman were essentially cumulative of other evidence already before the jury. ECF Doc. 4-1 at 169-70. Fairminded jurists could disagree on the correctness of that determination. *See Harrington*, 562 U.S. at 102-03. As the court reasoned, even if Stewart's statements to Kauffman had been excluded, the jury had: (i) Strayer's testimony that Baker had overdosed and was successfully revived with Narcan, which was effective against overdoses caused by opiates (ECF Doc. 5-1 at 161, 164-65); (ii) Strayer's testimony that Baker later stated she had overdosed after consuming white powder she received from Stewart (ECF Doc. 5-1 at 166-67); (iii) Deputy Dixon's testimony that he found inside Baker's car two Vicodin pills, which was a Schedule II drug pain reliever (ECF Doc. 5-1 at 175-76); (iv) Deputy Wood's testimony that Stewart gave varying statements regarding his knowledge of Baker's drug-use history, settling on that he knew Baker had purchased the Vicodin from a third individual (ECF Doc. 5-1 at 182-86, 188); and (v) the coroner's, Michael Failor, D.O., testimony that Narcan only worked on opiate-type narcotics, such as heroin and fentanyl and that Vicodin would qualify as an opiate, though he was not sure whether it would assist with a Vicodin overdose (ECF Doc. 5-1 at 267, 277-79). ECF Doc. 4-1 at 153-54, 169-70. That evidence could have satisfied the elements of the sole surviving charge related to Baker, corrupting another with drugs, which required furnishing a schedule I or II controlled which either caused serious physical harm or drug dependence. Ohio Rev. Code § 2925.02(A)(3); ECF Doc. 4-1 at 3. Therefore, the state court's determination that Stewart suffered no prejudice on account of counsel's failure to object

under *Massiah* to the use of his statements regarding Baker was not so lacking in justification that it was beyond any possibility for fairminded disagreement. *Harrington*, 562 U.S. at 102-03.

Stewart argues that the Ohio Court of Appeals' prejudice determination was unreasonable because the remaining evidence would not have been sufficient to establish his guilt "beyond a reasonable doubt." ECF Doc. 6 at 15. But, as noted above, under AEDPA, our question isn't whether we agree with the state court's determination that, but for the admission of Stewart's statements to Kauffman, the jury would not have found him guilty. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the relevant question is whether it was "unreasonable – a substantially higher threshold;" and one I find has not been met. *Id.*

Accordingly, I recommend that Stewart's Ground One claim be DISMISSED as meritless.

### C. Ground Two

In his Ground Two claim, Stewart argues that trial counsel was ineffective for not objecting to Yingling's testimony regarding Matthews's presumptive positive drug test result on the ground that it had not been previously disclosed. ECF Doc. 1 at 8.

Warden Sheldon responds that the Ohio Court of Appeals' rejection of this claim was neither an unreasonable application of United States Supreme Court precedent nor an unreasonable determination of the facts in the record. ECF Doc. 4 at 29-33. Warden Sheldon argues that there was no indication in the record that trial counsel was surprised by Yingling's testimony, which substantiates the state's version of events on direct appeal. ECF Doc. 4-1 at 32-33.

In his traverse, Stewart largely repeats the arguments he made in his initial brief to the Ohio Court of Appeals. ECF Doc. 6 at 16-23.

The Ohio Court of Appeals' denial of Stewart's Ground Two claim was neither contrary to, nor an unreasonable application of, *Strickland*. 28 U.S.C. § 2254(d). At bottom, the Ohio Court of Appeals rejected Stewart's Ground Two claim because the factual premise underlying the claim (that Yingling testified about a previously undisclosed, presumptively positive drug test) was not supported by the record. ECF Doc. 4-1 at 172. That was a state court factual finding, which, in light of counsel's conduct at trial, was reasonable. ECF Doc. 4-1 at 172; ECF Doc. 5-1 at 321 (trial counsel raising no objection to the admission of Yingling's report), ECF Doc. 5-1 at 349 (trial counsel agreeing with the trial judge that Yingling's testimony was anticipated); ECF Doc. 5-1 at 362 (trial counsel relying on the lack of confirmation testing to argue that there was no evidence from which the jury could find beyond a reasonable doubt that Mathews overdosed on Fentanyl). On federal habeas review, the burden, then, is on Stewart to rebut that factual finding with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003). Stewart points to discrepancies in Yingling's testimony, the omission of the presumptive positive test in Yingling's report, and his own assertion that counsel would have acted differently had the information been disclosed. ECF Doc. 6 at 18-23. I find those assertions insufficient to rebut the state court's factual finding. Therefore, fairminded jurists could disagree on the correctness of the Ohio Court of Appeals' rejection of Stewart's Ground Two claim.[4] *See Harrington*, 562 U.S. at 102-03.

---

[4] It might have been more appropriate for Stewart to raise his Ground Two claim in a petition for postconviction relief under Ohio Rev. Code § 2953.21(A)(1)(a)(i), with supporting affidavits from Stewart and/or trial counsel to substantiate his contention that Yingling's testimony was undisclosed. *See State v. Cole*, 2 Ohio St. 3d 112, 114 (1982) (stating that a petition for postconviction relief with evidence *de hors* of ineffective assistance of counsel is sufficient to avoid dismissal under the doctrine of res judicata). However, Stewart had to do so within 365 days from the day the trial transcript was filed with the Ohio Court of Appeals, or until January 16, 2019. Ohio Rev. Code § 2953.21(A)(2)(a); ECF Doc. 4-1 at 264 (docket sheet indicating the transcript was filed on January 16, 2018). Since Stewart knew of the claim since at least his direct appeal of Yingling's undisclosed testimony, he likely would not be able to

Accordingly, I recommend that Stewart's Ground Two claim be DISMISSED as meritless.

### III.  Certificate of Appealability

#### A.  Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a COA "state the specific issue or issues that satisfy the showing required by § 2253 (c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the COA at the time of its final adverse order, a recommendation regarding the COA issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

---

show that he was unavoidably prevented from discovering the facts upon which the claim relies in time to timely file now.  Ohio Rev. Code § 2953.23(A)(1)(a).

### B.      Analysis

If the Court accepts my recommendations, Stewart will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Stewart's Ground One and Ground Two claims are meritless.  Because jurists of reason would find neither conclusion to be debatable, I recommend that no COA issue in this case.

## IV.     Recommendation

Because all of Stewart's claims are meritless, I recommend that Stewart's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Stewart not be granted a COA.

Dated: March 14, 2022

Thomas M. Parker
United States Magistrate Judge

_____

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge

without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

20