PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MR. ALEXIS J. STEWART, | ) | |
| | ) | CASE NO. 1:19CV2283 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WARDEN ED SHELDON, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Respondent. | ) | [Resolving ECF No. 8] |

Pending before the Court is Petitioner Mr. Alexis J. Stewart's Objection to the assigned magistrate judge's Report and Recommendation (ECF No. 7) as it pertains to Ground One. ECF No. 8. The assigned magistrate judge recommended that the underlying habeas petition (ECF No. 1) be denied and Petitioner be denied a certificate of appealability.

For the following reasons, Petitioner's objection is overruled, the Report and Recommendation is adopted, the underlying habeas petition (ECF No. 1) is denied, and no certificate of appealability will be issued.

### I. Background

In June 2017, a Logan County Court of Common Pleas grand jury indicted Petitioner with: (i) one count of possession of cocaine; (ii) one count of aggravated possession of drugs; (iii) two counts of corrupting another with drugs; (iv) one count of illegal conveyance of drugs of abuse on to grounds of a specified governmental facility; and (v) one count of engaging in a pattern of corrupt activity. ECF No. 4-1 at PageID #: 60 – 61. In October 2017, a jury trial was held, and the jury found Petitioner guilty of (i) two counts of corrupting another with drugs, and

(1:19CV2283)

(ii) one count of illegal conveyance of drugs onto grounds of a specified governmental facility. *Id*. at PageID #: 67 – 68. The jury found Petitioner not guilty of the remaining charges. *Id*. In the aggregate, Petitioner was sentenced to seventeen (17) years in prison. *Id*. at PageID #: 71.

In November 2017, Petitioner appealed his convictions to the Ohio Court of Appeals, setting forth a total of six assignments of error. *Id*. at PageID #: 78. Most relevant to the instant matter, however, are Petitioner's two ineffective assistance of counsel claims, which state:

> I. Mr. Stewart was denied the effective assistance of counsel when counsel did not seek suppression of the statements by Stewart to an undercover agent while incarcerated at a critical stage of the case in violation of his Sixth Amendment right to counsel and the parallel Ohio right.
>
> II. Mr. Stewart was denied the effective assistance of counsel when counsel did not object to the Edward Yingling testimony and related non-disclosure.

*Id*. at PageID #: 92 – 97, 98 – 101. The basis of Petitioner's first ground is that a confidential informant deliberately elicited incriminating statements outside the presence of his (Petitioner's) counsel and, as a result, Petitioner suffered unfair prejudice at trial. The basis for Petitioner's second ground is that defense counsel was not aware the prosecution would call a state criminologist to proffer expert testimony about drug test results, but had counsel known, an objection could have been raised, and Petitioner could have avoided unfair prejudice at trial. In opposition, the prosecution argued that Petitioner was not denied the effective assistance of counsel because (i) the right to effective assistance of counsel had not yet attached, the information was volunteered by Petitioner, and in the alternative, any error was harmless (*Id*. at PageID #: 157 – 161), and (ii) the prosecution did in fact provide a summary of their expert's report, thereby fulfilling all obligations pursuant to applicable law (*Id*. at PageID #: 161 – 163).

(1:19CV2283)

In June 2018, the Ohio Court of Appeals overruled each of Petitioner's grounds and affirmed his convictions. In September 2018, the Ohio Supreme Court declined to exercise jurisdiction.

The habeas petition giving rise to the instant matter (ECF No. 1) was filed in October 2019, raising two grounds:

> Ground One: Trial counsel was ineffective for not moving to suppress Stewart's statements to the informant regarding Baker's overdose as obtained in violation of Massiah v. United States, 377 U.S. 201 (1964); and

> Ground Two: Trial counsel was ineffective when he did not object to the state's toxicology expert's testimony that [Victim]'s urine test was presumptively positive for Fentanyl, when the expert's written report did not say there was a positive test result and the expert's intended testimony was not previously disclosed to the defense.

ECF No. 1 at PageID #: 6 – 8, ECF No. 7 at PageID #: 812. Petitioner objects to the assigned magistrate judge's recommend resolution of Ground One, but "offers no objection to the Report and Recommendation as to Ground Two." ECF No. 8 at PageID #: 832. As grounds for the sole objection, Petitioner states that "there is no reasonable review of the case upon which reasonable jurists could conclude a lack of prejudice to [Petitioner]." *Id*.

## II. Discussion

When objections have been made to the Magistrate Judge's Report and Recommendation, the District Court standard of review is de novo. Fed. R. Civ. 72(b)(3). A district judge: "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. Importantly, objections "must be specific in order to trigger the de novo review." Bulls v. Potter, No. 5:16-CV-02095, 2020 WL 870931, at *1 (N.D. Ohio Feb. 21, 2020) (citing Fed. R. Civ. P. 72(b)(2)). "A party disappointed with the magistrate judge's recommendation has a 'duty to pinpoint those

(1:19CV2283)

portions of the magistrate's report that the district court must specially consider.'" *Spring v. Harris*, No. 4:18-CV-2920, 2022 WL 854795, at *4 (N.D. Ohio Mar. 23, 2022) (quoting *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1068 (N.D. Ohio 2014)). "A general objection to the entirety of [a Report and Recommendation]" or "an exact recitation of arguments previously raised" will fail to "meet the specificity requirement for objections." *Potter*, 2020 WL at *1.

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus may not be granted unless the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) – (2); *see also Wilson v. Sheldon*, 874 F.3d 470, 474 – 475 (6th Cir. 2017).

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). "A federal court may not issue the writ on the basis of a perceived error of state law." *Nguyen v. Warden, N. Cent. Corr. Inst.*, No. 19-3308, 2019 WL 4944632, at *4 (6th Cir. July 24, 2019) (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Because state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters. *See Mason v. Nagy*, No. 21-1040, 2021 WL 6502177, at *3 (6th Cir. July 27, 2021) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) (stating that "[a] violation of state law is not cognizable in federal habeas [] unless such error amounts to a

4

(1:19CV2283)

fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution").

In this case, the majority of Petitioner's seven-page objection is a nearly verbatim restatement of what was set forth in the Traverse to Return of Writ (ECF No. 6).

| Traverse to Return of Writ (ECF No. 6) | Objection (ECF No. 8) |
|---|---|
| Ground One deals with Mr. Stewart's conviction (Corrupting Another with Drugs) for allegedly causing the death of a drug (heroin) trafficking client due to an overdose. The State case was based upon supposed claims of a dying victim not supported by the observations of officers, as she had claimed to have overdosed on heroin provided by Mr. Stewart despite the lack of any powder or residue at the scene. That case was brought home, however, when the prosecution introduced evidence from Mr. Stewart's mouth that "I sold the heroin, someone overdosed." The problem was that this confession was elicited in violation of Massiah when detectives sent in a fake inmate to question Mr. Stewart without the assistance of counsel. ECF No. 6 at PageID #: 755 – 756. | Ground One deals with Mr. Stewart's conviction (Corrupting Another with Drugs) for allegedly causing the death of a drug (heroin) trafficking client due to an overdose. The State case was based upon supposed claims of a dying victim not supported by the observations of officers, as she had claimed to have overdosed on heroin provided by Mr. Stewart despite the lack of any powder or residue at the scene. That case was brought home, however, when the prosecution introduced evidence from Mr. Stewart's mouth that "I sold the heroin, someone overdosed." The problem was that this confession was elicited in violation of Massiah when detectives sent in a fake inmate to question Mr. Stewart without the assistance of counsel. ECF No. 8 at PageID #: 832 – 833. |
| As Respondent correctly noted, the exact statement made by Mr. Stewart and used against him is in the State court decision. "Well, I'm kinda fucked. I had originally — I got an F2. * * * Cause when I sold the heroin, someone overdosed." ECF No. 6 at PageID #: 757. | As Respondent correctly noted in his Return of Writ, the exact statement made by Mr. Stewart and used against him is in the State court decision. "Well, I'm kinda fucked. I had originally — I got an F2. * * * Cause when I sold the heroin, someone overdosed." ECF No. 8 at PageID #: 833. |
| As to the relevant case – the count alleging corrupting Martha Baker – the State had a problem that explains the decision to violate Massiah. The State had no proof of the substance causing the overdose. Martha Baker had died prior to testifying. No testing was done on her blood or urine at the time. Thus, the sole bases (excluding the admission) for concluding that the overdose was due to an | In this case, the State had a problem that explains the decision to violate Massiah. The State had no proof of the substance causing the overdose. Martha Baker had died prior to testifying. No testing was done on her blood or urine at the time. Thus, the sole bases (excluding the admission) for concluding that the overdose was due to an opiate were essentially the fact of the overdose, the fact that |

5

(1:19CV2283)

opiate were essentially the fact of the overdose, the fact that Narcan worked, and the fact that Martha Baker allegedly told the EMT Josh Strayer that she snorted white powder of unknown type received from "Alex." Transcript of Jury Trial, Doc. 5-1, pp. 166-167, 171, PageID #491-492, 496.

This, however, was problematic. No one found any powder residue. However, Deputy Drew Dixon found a pill, bottle and "some pills in the car * * * Vicodin, which is a Schedule II drug pain reliever." Transcript of Jury Trial, Doc. 5-1, p. 175, PageID #500. The same were tested and confirmed to include hydrocodone. Transcript of Jury Trial, Doc. 5-1, p. 176, PageID #501. As such, the pills were opiates. Transcript of Jury Trial, Doc. 5-1, p. 189, PageID #514. Narcan works on Vicodin. Transcript of Jury Trial, Doc. 5-1, p. 278, PageID #603.

In light of this, the jury would have strong reason to believe that the State could not prove that the overdose was caused by anything given to Ms. Baker by Mr. Stewart. First, the fact that Vicodin was found suggests that the whole story about an unknown white powder might have been made up by Ms. Baker to avoid criminal charges for illegal possession and use of Vicodin. Second, even if the story about the unknown white powder was taken as reliable by the jury, the nature of the same being unknown coupled with the known presence of opiates in pill form suggests that possibly the white powder was not an opiate (might have been cocaine, for example) and thus did not cause an opiate overdose. Simply put, cocaine as a stimulant is believed by many on the street to offer a counteraction to an opiate overdose risk. Thus, a person sensing a possible opiate overdose from Vicodin might in fact snort cocaine as an attempt at a "Street Narcan" substitute. The point is, though, that the presence of the Vicodin pills in the car caused

opiate were essentially the fact of the overdose, the fact that Narcan worked, and the fact that Martha Baker allegedly told the EMT Josh Strayer that she snorted white powder of unknown type received from "Alex." Transcript of Jury Trial, Doc. 5-1, pp. 166-167, 171, PageID #491-492, 496.

This, however, was problematic. No one found any powder residue. However, Deputy Drew Dixon found a pill, bottle and "some pills in the car * * * Vicodin, which is a Schedule II drug pain reliever." Transcript of Jury Trial, Doc. 5-1, p. 175, PageID #500. The same were tested and confirmed to include hydrocodone. Transcript of Jury Trial, Doc. 5-1, p. 176, PageID #501. As such, the pills were opiates. Transcript of Jury Trial, Doc. 5-1, p. 189, PageID #514. Narcan works on Vicodin. Transcript of Jury Trial, Doc. 5-1, p. 278, PageID #603.

In light of this, the jury would have strong reason to believe that the State could not prove that the overdose was caused by anything given to Ms. Baker by Mr. Stewart. First, the fact that Vicodin was found suggests that the whole story about an unknown white powder might have been made up by Ms. Baker to avoid criminal charges for illegal possession and use of Vicodin. Second, even if the story about the unknown white powder was taken as reliable by the jury, the nature of the same being unknown coupled with the known presence of opiates in pill form suggests that possibly the white powder was not an opiate (might have been cocaine, for example) and thus did not cause an opiate overdose. Simply put, cocaine as a stimulant is believed by many on the street to offer a counteraction to an opiate overdose risk. Thus, a person sensing a possible opiate overdose from Vicodin might in fact snort cocaine as an attempt at a "Street Narcan" substitute. The point is, though, that the presence of the Vicodin pills in the car caused

(1:19CV2283)

| | |
|---|---|
| problems with the jury finding beyond a reasonable doubt (1) that the "unknown white powder" story was reliable, (2) that the "unknown white powder" was an opiate, and (3) that the unknown white powder caused the overdose. ECF No. 6 at PageID #: 762 – 763. | problems with the jury finding beyond a reasonable doubt (1) that the "unknown white powder" story was reliable, (2) that the "unknown white powder" was an opiate, and (3) that the unknown white powder caused the overdose. ECF No. 8 at PageID #: 833 – 834. |
| Respondent argues alternatively that the error was actually harmless because of the supposedly strong evidence against Mr. Stewart. The major problem with that claim is that the State of Ohio belied that claim themselves with the prior arguments by the prosecution to the jury.<br><br>During the opening statement, the State, up until the point of discussing these admissions by Mr. Stewart with the jury, had only a claim from an EMT that the deceased had claimed to have used powder provided by Mr. Stewart, with opiates in a non-powder form found in the vehicle (Vicodin) but no powder found on the victim or in the vehicle. Thus, this hearsay testimony, although admissible, was suspect. The State, however, in explaining the case to the jury, spent a great deal of time leading up to the very admission that should have been suppressed, noting "You've got your admission right there." Transcript of Jury Trial, Doc. 5-1, p. 117, PageID #442. At close, the State relied largely upon the admission, as well. Transcript of Jury Trial, Doc. 5-1, pp. 355, 370-371, PageID #680, 695-696. When the State starts with the confession and ends on the confession, the confession is the centerpiece of the State argument. To now suggest otherwise is simply disingenuous.<br><br>Respondent has correctly noted the deference due to the State appellate court. However, Respondent's assessment of the conclusions to be drawn is legally inaccurate. The State appellate court, in making its conclusion, made the same error in the analysis done by Respondent in this habeas action. The Court and Respondent both searched the record to see whether the facts alleged by the | Respondent argued that the error was actually harmless because of the supposedly strong evidence against Mr. Stewart, and that argument won the day with the Report and Recommendation. The major problem with that claim is that the State of Ohio belied that claim themselves with the prior arguments by the prosecution to the jury.<br><br>During the opening statement, the State, up until the point of discussing these admissions by Mr. Stewart with the jury, had only a claim from an EMT that the deceased had claimed to have used powder provided by Mr. Stewart, with opiates in a non-powder form found in the vehicle (Vicodin) but no powder found on the victim or in the vehicle. Thus, this hearsay testimony, although admissible, was suspect. The State, however, in explaining the case to the jury, spent a great deal of time leading up to the very admission that should have been suppressed, noting "You've got your admission right there." Transcript of Jury Trial, Doc. 5-1, p. 117, PageID #442. At close, the State relied largely upon the admission, as well. Transcript of Jury Trial, Doc. 5-1, pp. 355, 370-371, PageID #680, 695-696. When the State starts with the confession and ends on the confession, the confession is the centerpiece of the State argument.<br><br>Respondent correctly noted the deference due to the State appellate court, which persuaded the Magistrate Judge apparently. However, the assessment of the conclusions to be drawn is legally inaccurate. The State appellate court, in making its conclusion, made the same error in the analysis done by Respondent in this habeas action and then adopted by the Magistrate Judge. The Court and Respondent both |

7

(1:19CV2283)

| | |
|---|---|
| prosecution could be found, and they could in fact be found. That is not the proper analysis, however. Harmless error is not shown by simply assessing the case from the standpoint of sufficiency of the evidence. Rather, the analysis is more akin to a weight of the evidence analysis.  ECF No. 6 at PageID #: 765 – 766. | searched the record to see whether the facts alleged by the prosecution could be found, and they could in fact be found. That is not the proper analysis, however. Harmless error is not shown by simply assessing the case from the standpoint of sufficiency of the evidence. Rather, the analysis is more akin to a weight of the evidence analysis.  ECF No. 8 at PageID #: 834 – 835. |
| Without Mr. Stewart's unconstitutionally elicited statement, the evidence of Mr. Stewart causing the overdose amounted to admissible hearsay from the deceased lady of using powder from Mr. Stewart, despite no powder residue being seem and despite Vicodin (also an opiate) plainly in view at the scene. From a standpoint of proof beyond a reasonable doubt, a real jury would not likely be impressed by this evidence alone but would not even question the State case after the admission was introduced.  ECF No. 6 at PageID #: 766. | Without Mr. Stewart's unconstitutionally elicited statement, the evidence of Mr. Stewart causing the overdose amounted to admissible hearsay from the deceased lady of using powder from Mr. Stewart, despite no powder residue being seem and despite Vicodin (also an opiate) plainly in view at the scene. From a standpoint of proof beyond a reasonable doubt, a real jury would not likely be impressed by this evidence alone but would not even question the State case after the admission was introduced.  ECF No. 8 at PageID #: 835. |
| As to the obvious problem for the prosecution of the Vicodin but no powder, in the context of an improperly admitted confession, the only Third District analysis of the Vicodin was that "Stewart further was aware that Martha had two Vicodin with her, indicating even more knowledge of her circumstances." That statement in the decision is astonishing. The Third District took the major defense point that should have been made (the Vicodin caused the overdose, not anything Mr. Stewart might have given her) and turned it strangely into evidence bolstering somehow the credibility of the EMT and hence the State case. It does not but for the unconstitutional eliciting of a confession and introduction thereof.  ECF No. 6 at PageID #: 766 – 767. | As to the obvious problem for the prosecution of the Vicodin but no powder, in the context of an improperly admitted confession, the only Third District analysis of the Vicodin was that "Stewart further was aware that Martha had two Vicodin with her, indicating even more knowledge of her circumstances." That statement in the decision is astonishing. The Third District took the major defense point that should have been made (the Vicodin caused the overdose, not anything Mr. Stewart might have given her) and turned it strangely into evidence bolstering somehow the credibility of the EMT and hence the State case. It does not but for the unconstitutional eliciting of a confession and introduction thereof.  ECF No. 8 at PageID #: 836. |

Because Petitioner's objection is a mere restatement of arguments previously before the Court and thoughtfully analyzed by the assigned magistrate judge, it is not a proper objection and the Court need not conduct *de novo* review.  This determination is consistent with, and well-

(1:19CV2283)

grounded-in, applicable law. *Green v. Andrews*, No. 07CV2093, 2010 WL 1957482, at *6 (N.D. Ohio May 14, 2010) (refusing to address petitioner's objections because they "[amounted] to approximately ten pages of text lifted verbatim from [petitioner]'s Traverse" and thus do not qualify as objections"); *Potter*, 2020 WL at *2 (reasoning that because petitioner's objection was supported "with an exact recitation of arguments that were previously raised before the Magistrate Judge, Petitioner's objections do not meet the specificity requirement that triggers this Court's obligation to perform a de novo review of the Report and Recommendation"); *Cannon v. Potter*, No. 1:16-CV-1849, 2019 WL 4315931, at *3 (N.D. Ohio Sept. 12, 2019) (declining to conduct *de novo* review because petitioner's "objections simply repeat and recite the arguments he made in his Traverse – in many instances, those arguments are repeated word-for-word"). Accordingly, the Court need not, and will not, consider Petitioner's objection.

### III.  Certificate of Appealability (COA)

The Court must now determine whether to grant a Certificate of Appealability ("COA") for Petitioner's ground for relief. Habeas courts are guided in their consideration of whether to grant a COA by 28 U.S.C. § 2253, which provides in relevant part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.

This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause. The sole difference between the pre- and post-AEDPA statutes is that the petitioner must now demonstrate he was

9

(1:19CV2283)

denied a *constitutional*, rather than federal, right. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (interpreting the significance of the revision between the pre- and post-AEDPA versions of that statute). Also, if a habeas claim is not procedurally defaulted, then the court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." Id. at 484.

After taking the above standard into consideration, the Court finds as follows:

The Court will not issue a COA for Ground One (Ineffective Assistance of Counsel). No jurist of reason would debate the Court's conclusions on that claim.

### IV. Conclusion

For the reasons provided above, the assigned magistrate judge's Report and Recommendation is adopted in its entirety, Petitioner's objection is overruled, the underlying habeas petition (ECF No. 1) is denied, and the Court will not issue a COA. A separate Judgment Entry will issue.

IT IS SO ORDERED.

| | |
|---|---|
| April 29, 2022 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

10